IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEERTSON FARMS, INC., et al., | No. C 06-01075 CRB |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| MIKE JOHANNS, et al. | |
| Defendants. | |

Nine plaintiffs, comprised of organic farms and member organizations opposed to the over-use of pesticides and the propagation of genetically modified foods, are suing several government officials and agencies over the deregulation of alfalfa hay engineered to be genetically resistant to the common herbicide Roundup.  In the Fourth Claim of the Complaint, Center for Food Safety ("CFS"), Beyond Pesticides, and Sierra Club (collectively referred to as "Plaintiffs") claim the Environmental Protection Agency ("EPA") violated the Endangered Species Act ("ESA") when it determined the tolerance level of glyphosate in food for human consumption without consulting the Fish and Wildlife Service ("FWS") to ascertain any potential effect on three endangered species.

Now pending before the Court is the EPA's motion to dismiss this claim, the only claim against it, on the ground that the Court lacks subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Defendants contend the suit is not properly brought in the federal district court for two reasons: 1) that plaintiffs failed to

exhaust their administrative remedies available under the Federal Food Drug and Cosmetic Act ("FFDCA"), which grants exclusive jurisdiction over objections to tolerance levels to the EPA, and 2) plaintiffs lack standing to bring their claim. After carefully considering the parties' memoranda, and with the benefit of oral argument, defendant's motion is hereby GRANTED.

## BACKGROUND

I.  **Factual Background**

In 1999, Monsanto Company officially licensed Roundup Ready alfalfa, a species of alfalfa genetically engineered to be resistant to glyphosate, the main ingredient in its pesticide Roundup. Compl. ¶ 89. Alfalfa is the fourth most widely-grown crop in the United States after corn, soybeans, and wheat. Compl. ¶ 74. Alfalfa is consumed as hay and as seed; hay is a main source of nutrition for dairy and meat cows, chickens, sheep, and horses, and alfalfa seed has a variety of uses including direct human consumption in the form of alfalfa sprouts. Compl. ¶¶ 77, 79. Glyphosate is a common pesticide that blocks an enzyme essential for green plant growth.

Subsequent to licensing Roundup Ready Alfalfa, Monsanto filed a petition with the EPA requesting a tolerance level determination for glyphosate. On September 27, 2002, the EPA, pursuant to the FFDCA, established a tolerance of 400 ppm of glyphosate in alfalfa hay. 67 Fed. Reg. 60934 (September 27, 2002.) On February 16, 2005, the EPA established a tolerance of 0.5 ppm for residues of glyphosate in alfalfa seed. Compl. ¶ 103.

In November 2004, Monsanto petitioned the USDA to deregulate genetically engineered alfalfa. In a Deregulation Determination published on June 27, 2005, the USDA concluded that the alfalfa engineered by Monsanto "would not present risk of plant pest introduction or dissemination," 70 Fed. Reg. 36917, 36918, (June 27, 2005) and that it "will not harm threatened or endangered species or organisms that are beneficial to agriculture; and... should not reduce the ability to control pests and weeds in alfalfa or other crops." 70 Fed. Reg. at 36919 (June 27, 2005.) As a result, genetically engineered alfalfa would no

longer be subject to the regulations established by the Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS").  Compl. ¶ 110.

The instant action brings six claims relating to two government agency actions: 1) the USDA's deregulation of genetically engineered alfalfa, and 2) the EPA's establishment of tolerance levels for the pesticide designed to be used on that alfalfa.  The Fourth Claim, brought by three of the nine plaintiffs, addresses the second issue.  The plaintiffs exhausted their administrative remedies under the ESA by giving the EPA sixty-days notice of the suit on November 18, 2005.  Pls.' Opp. at 12.  The EPA filed this motion to dismiss on April 24, 2006, seeking to dismiss this claim for lack of subject matter jurisdiction based on plaintiffs' failure to exhaust the exclusive administrative remedies of the FFDCA and on their lack of standing to bring the claim.

## II.     Relevant Statutes

### A.     FFDCA

The EPA regulates pesticides under two statutory schemes: the FFDCA and the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  While both statutes examine health risks associated with pesticides, the FFDCA regulates the amount of pesticide that may safely be consumed in foods, while FIFRA governs the use, sale, and labeling of the pesticides themselves.  Washington Toxics Coal. v. EPA, 413 F.3d 1024, 1030 (9th Cir. 2005).

The FFDCA establishes the tolerance levels of pesticides in specific foods.  These are the maximum levels of pesticide permitted for a food to be considered safe for human consumption and salable on the market.  The act requires investigation into the best data available as to the "nature of any toxic effect shown to be caused by the pesticide chemical" on consumers.  21 U.S.C. § 346a(b)(2)(D).  An EPA administrator may issue regulations "establishing, modifying, or revoking a tolerance for a pesticide chemical residue" on its own initiative or pursuant to a petition by an outside party.  Id. § 346a(b)(1)(A), (B).  If, as here, an outside party petitions to establish, modify, or revoke a tolerance level, the EPA may: (i) "issue a final regulation ... establishing, modifying, or revoking a tolerance [level];" (ii) issue

a proposed regulation subject to public comment, "and thereafter issue a final regulation...;" or (iii) "issue an order denying the petition." Id. § 346a(d)(4)(A).

The FFDCA further sets forth an administrative appeal process through which any person may object to the EPA's decision regarding tolerance levels pursuant to section 346a(d)(4). Under that process, any person may file an objection within 60 days and request a public evidentiary hearing. 21 U.S.C. § 346a(g)(2)(A). The EPA must respond to an objection with a final order explaining its decision to modify or affirm its initial order. Id. § 346a(g)(2)(C). The FFDCA then permits "any person who will be adversely affected by such order or regulation" to obtain judicial review in the United States Court of Appeals." Id. § 346a(h)(1). In 1996, the Food Quality Protection Act ("FQPA") amended the FFDCA, adding the following language to subsection (h): "any issue as to which review is or was obtainable under this subsection shall not be the subject of judicial review under any other provision of law." Id. § 346a(h)(5).

The FFDCA's implementing regulations further explain that judicial review is not available for "[a]gency actions subject to the objection procedure of the FFDCA section [346a(g)(2)] ... unless an adversely affected party exhausts these objection procedures." 40 CFR § 180.30(b). Moreover, the regulations state that the relevant objection procedures relate to the "underlying action" of an "[a]gency disposition of a petition seeking the establishment, modification, or revocation of a tolerance or exemption." Id. § 180.30(a)(3); see also Pls.' Opp. at 15.

### B. ESA

The ESA protects endangered species by requiring each governmental agency ("action agency") to ensure that any action it authorizes, funds or executes is "not likely to jeopardize the continued existence" of an endangered species, or to destroy its habitat. 16 U.S.C. § 1536(a)(2). The agency must determine if its action may adversely affect a listed endangered species, and if so, consult with the expert agency for that species. In consultation with the appropriate expert agency, the acting agency prepares a biological assessment outlining the risk and suggesting alternative courses of action.

4

The ESA allows for "citizen suits" claiming violations of the Act. The statute provides for, but does not require, jurisdiction in district courts. 16 U.S.C. § 1540(c) ("The several district courts of the United States... shall have jurisdiction over any actions arising under [the ESA].").

**STANDARD OF REVIEW**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must prove that the Court has jurisdiction to decide the case. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.... It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted). The Court accepts the allegations of the complaint as true and construes them in the light most favorable to the plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). The Court may dismiss a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986)).

**DISCUSSION**

The parties do not dispute that plaintiffs failed to exhaust the administrative remedies provided for in the FFDCA. Rather, the issue before the Court is whether those administrative remedies, and the exclusive jurisdiction of the Court of Appeals provided therein, apply here, or whether the Court has subject matter jurisdiction pursuant to the provisions of the ESA.

**I.   Exclusive Jurisdiction of Administrative Appeal Process**

The Supreme Court has established that the application of an exclusive jurisdiction clause is generally appropriate where "fairly discernable in the statutory scheme," Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994), and when the administrative review process would provide the plaintiff meaningful review of their challenge. See McNary v. Haitian Refugee Cntr., Inc, 498 U.S. 479, 484 (1991) (declining to apply exclusive administrative jurisdiction clause when doing so would mean that "meaningful judicial

review of [plaintiffs'] statutory and constitutional claims would be foreclosed"). Plaintiffs argue that their claim is not subject to the FFDCA's narrow exclusive review provision because 1) their claim does not fall within the language of section 346a(h) and because 2) the administrative review procedure available under the FFDCA would not provide meaningful review of their claim.

### A. Ninth Circuit Law

Although neither the Ninth Circuit nor any other circuit has addressed the interplay of the FFDCA's administrative appeal process and its applicability to ESA claims, the Ninth Circuit has addressed the applicability of exclusive jurisdiction clauses in other circumstances.

In California Save Our Streams Council, Inc. v. Yeutter, 887 F.2d 908 (9th Cir. 1989), the court applied the exclusive jurisdiction clause of the Federal Power Act ("FPA") to claims arising under other statutes providing, but not requiring, their own jurisdictional schemes. The FPA states, in relevant part:

> Any party to a proceeding under this chapter ... may obtain a review of such order in the United States Court of Appeals.... Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.

Id. at 910-11. The plaintiffs alleged that the Federal Energy Regulatory Commission ("FERC") violated the National Environmental Policy Act ("NEPA") and the American Indian Religious Freedom Act ("AIRFA") when it granted a license to operate a hydroelectric power facility pursuant to its authority under the FPA. Pursuant to a requirement under the FPA, FERC had sought input on the environmental effects of the relevant license from the Forest Service, and the plaintiffs attempted to challenge the Forest Service's analysis.

Although NEPA and AIRFA allow for private rights of action in the district court, the court concluded that the overarching exclusive jurisdictional clause of the FPA applied. Id. at 911 ("[W]hen two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation."). There, the court held that the "specific jurisdictional provisions of the FPA" trumped the "general and widely

6

applicable procedures" governing NEPA and AIRFA. Id. Concluding that Congress intended the jurisdictional provision of the FPA to be read broadly, the Yeutter court held that any claim challenging FERC licenses must be made pursuant to that exclusive remedy.

In Northwest Resource Info. Ctr. v. National Marine Fisheries Service, 25 F.3d 872 (9th Cir. 1994), the Ninth Circuit affirmed a district court's dismissal for lack of jurisdiction of an ESA claim brought against an agency acting under the authority of the Northwest Power Act ("NPA"). Congress passed the NPA with the "dual task of managing the river system to assure power and to preserve fish." Id. at 875. The court further noted that "[n]either task was subordinate to the other," id., and therefore, like in Yeutter, the more specific exclusive jurisdiction clause of the NPA trumped the more general citizen suit provision of the ESA.

Recently, a district court in Hawaii faced a similar issue. In American Bird Conservancy v. FCC, 408 F. Supp. 2d 987 (D. Haw. 2006), the plaintiffs sought to pursue an ESA claim in district court, alleging that the FCC, acting under the Communications Act and the Hobbs Act, improperly delegated environmental consultation responsibilities to private tower owners. The court dismissed the action against the Federal Communications Commission for lack of jurisdiction, holding that the broad exclusive jurisdiction provision of the Hobbs Act–and not the general jurisdiction provisions of the ESA–applied,[1] even though the FCC's licensing process did not require or provide for an environmental review. Relying upon Yuetter, the court "look[ed] beyond the allegations of the complaint and consider[ed] the nature of the lawsuit and the relief sought," and determined that "[p]laintiffs cannot circumvent the proscriptions of [the Communications Act] by merely couching their claim as an action against the FCC for violating the ESA." Id. at 992.

---

[1] The Hobbs Act provides:

> The Court of Appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders of the Federal Communications Commission made reviewable by [the Communications Act].

American Bird, 408 F. Supp. 2d at 990 (quoting 28 U.S.C. § 2342).

7

The Ninth Circuit, however, applies a different analysis to statutes lacking a relevant exclusive review provision. In Washington Toxics Coal. v. EPA, 413 F.3d 1024 (9th Cir. 2005), the plaintiffs alleged that the EPA violated the ESA when it approved pesticides pursuant to its authority under FIFRA. The court concluded that since FIFRA "contains a limited administrative remedy" and "[n]either FIFRA nor the ESA ... suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief under the ESA," the jurisdictional scheme of the ESA was an appropriate avenue through which the plaintiffs could pursue their claim in the first instance. Id. at 1033. The court reasoned that an "agency cannot escape its obligation to comply with the ESA merely because it is bound to comply with another statute that has consistent, complementary purposes." Id. at 1032.

**B.   The FFDCA's Exclusive Review Provision**

Yeutter and Washington Toxics, when read together, outline the Ninth Circuit's jurisdictional analysis of suits brought against statutory challenges of agency actions where the statute provides for district court jurisdiction and the agency's action is governed by a different statute. District courts lack jurisdiction over claims against federal actions taken pursuant to a statute with an applicable statutory exclusive review provision. But absent a relevant jurisdictional provision, the district court may exert jurisdiction over the claim as provided for in the ESA. This Court therefore does not have subject matter jurisdiction if the dispute in this matter falls under the exclusive jurisdiction provision of the FFDCA. If, however, this dispute falls outside the purview of the FFDCA's exclusive jurisdiction provision, then the jurisdictional scheme of the ESA applies and this Court may properly hear the claim.

Although the Ninth Circuit has not had an occasion to interpret the interplay between the FFDCA and the ESA, the District Court of the District of Columbia analyzed the two jurisdictional provisions in American Farm Bureau v. EPA, 121 F. Supp. 2d 84 (D.D.C. 2000). The court concluded that a suit challenging the EPA's failure to apply safety criteria and data requirements mandated by statute when analyzing the effect of pesticides on humans could properly be heard in district court despite the exclusive review provision of the

8

FFDCA. The court concluded that because the challenge was not to particular tolerance levels, but to a systematic EPA policy of nonenforcement of the safety margin, the exclusive jurisdiction over tolerance determinations did not apply. The dispute there concerned the definition of "general procedures" as used in section 346a(e)(1)(C), and section 346a(h)(1), which gives the EPA exclusive jurisdiction over challenges to such procedures. Closely reading the language of the statute, the court concluded that "general procedures" were discretionary, and statutory compliance with the rest of the FFDCA was nondiscretionary. Since nonenforcement of the safety margin fell outside of the language of section 346a(e)(1)(C), it fell outside of the exclusive review provision pertaining to it. Id. at 93-94.

Plaintiffs rely on American Farm Bureau to demonstrate the narrowness of the FFDCA's exclusive review provision, particularly as compared to the broad exclusive jurisdictional provisions relevant to Yeutter, Northwest, and American Bird. See American Farm Bureau, 121 F. Supp. 2d at 94 ("Congress has carved out specific areas of the FFDCA for appellate review which do not encompass all of § 346a."); see also Cutler v. Hayes, 818 F.2d 879, 888 (D.C. Cir. 1987) ("The FDC Act contains no single, overarching provision governing judicial review. Instead, discrete agency actions are subject to specialized review provisions."). For the most part, plaintiffs are correct. Yet the relevant question in this case, as established above by Yeutter and Washington Toxics and supported by American Farm Bureau, is not how narrow the exclusive review provision of section 346a(h) is, but whether the particular claim plaintiffs bring lies within its narrow scope. American Farm Bureau suggests that the FFDCA's exclusive review provisions, *because* they are narrow, should be read closely and applied only where applicable. The court in American Farm Bureau objected to the defendants asking it "to expand the appellate review provision far beyond its plain language." American Farm Bureau, 121 F. Supp. 2d at 94. This admonition does not suggest that exclusive review provisions ought not to be applied where narrow; rather, it demands careful interpretation of the plain language of the statute. As a result, the Court's task here is to determine whether this dispute falls under the admittedly narrow exclusive review provision of section 346a of the FFDCA.

9

### C. Analysis

#### 1. Language of Section 346a

Under the FFDCA, "any person" may petition the EPA to issue a regulation "establishing, modifying, or revoking a tolerance for a pesticide." 21 U.S.C. § 346a(d)(1). If the EPA issues such a regulation, "any person" may file an objection to the regulation within 60 days and the objector may be entitled to a public evidentiary hearing. Id. § 346a(g)(2)(A)-(B). Following the objection process, the EPA must issue a final decision. Id. § 346a(g)(2)(C). This final decision is then subject only to appellate review:

> In a case of actual controversy as to the validity of any ... order issued under subsection ... (g)(2)(C) of this section..., any person who will be adversely affected by such order or regulation may obtain judicial review by filing in the United States Court of Appeals for the circuit wherein that person resides or has its principal place of business a petition praying that the order or regulation be set aside in whole or in part.... Upon the filing of such a petition, the court shall have exclusive jurisdiction to affirm or set aside the order or regulation complained of in whole or part.

Id. § 346a(h)(1)-(2). In 1996, the FQPA added the following to subsection (h): "Any issue as to which review is or was obtainable under this subsection shall not be the subject of judicial review under any other provision of law." Id. § 346a(h)(5). Furthermore, plaintiffs concede, as they must, that final decisions on "objections to establishment, modification, or revocation of a tolerance or exemption" must be appealed to the United States Courts of Appeal. 40 C.F.R. § 180.30(a). In addition, for EPA actions subject to this objection procedure, "judicial review is not available unless an adversely affected party exhausts these objection procedures, and any petition procedures preliminary thereto." Id. § 180.30(b). Nevertheless, plaintiffs argue that they "*do not* seek revocation or modification of tolerance levels." Pls.' Opp. at 15 (quoting 40 C.F.R. § 180.30(a),(b)) (emphasis in original). They contend that their objection pertains to the procedure by which the tolerance level was established, and not the establishment itself, and thus falls outside the purview of the exclusive review provision of section 346a.

Plaintiffs, however, cannot evade the plain language of section 346a by excluding "establishment" when they assert that they "*do not* seek revocation or modification of tolerance levels." Id. Nor can plaintiffs evade the plain meaning of "establishment." The

10

establishment of tolerance levels connotes the *process* in addition to the result. "Establish" is defined as "to bring about or into existence." Black's Law Dictionary (7th ed. 1999). The act of "bringing about" necessarily occurs over a period of time. Although "establishing" concludes with a final result, the word more accurately encompasses the process that leads to the result. Accordingly, plaintiffs own argument–that they merely challenge the process by which the tolerance levels are determined–is necessarily incorporated in the plain language of the relevant exclusive review provision.

Even if "establishment" were narrowly defined to apply only to the final determination, courts regularly hold that a challenge to the procedure of an agency action is tantamount to challenging the action itself. See, e.g., American Bird, 408 F. Supp. 2d at 992-93 ("Despite Plaintiffs' assertion that they are not directly or implicitly challenging the Communications Act, it is clear that Plaintiffs' suit essentially attacks the administrative procedures and protocols established by the FCC in determining whether or not to seek consultation with the FWS."); see also Yeutter, 887 F.2d at 910 (finding "unpersuasive" the plaintiffs' argument "that they are not attacking the licensing decision made by FERC but instead are seeking review only of the Forest Service's failure to follow the procedural and substantive steps outlined in statutes outside the purview of power and energy regulation.")

In New York v. EPA, 350 F. Supp. 2d 429 (S.D.N.Y. 2004), the court faced an almost identical dispute as here and interpreted the same exclusive review provision of the FFDCA. The plaintiff objected to the EPA's departure from a presumptive tenfold margin in the reassessment of tolerance levels, a presumption that is mandated by the FQPA amendments to the FFDCA. The plaintiffs made a similar claim to those in this case, arguing that "their claims arise ... not from their disagreement with the results of the reassessment with respect to any particular tolerance, but from their conviction that the review process itself violated the FQPA's" requirements. Id. at 441. They argued that the petition process was "geared towards challenging the results of specific reassessment determinations, rather than the processes by which those determinations were reached." Id.

The New York court rejected this argument, stating that procedural challenges made to specific tolerance level determinations fell under the scope of the FFDCA's exclusive review provision. The court there further noted that the plaintiff's complaint and assertion of district court jurisdiction presented a paradox that also exists here: "Their attempt to have it both ways by identifying a specific set of tolerances in their pleadings, while insisting in their briefing that their challenge was really to the process rather than he outcome of the determination, is ultimately unconvincing." Id. at 446.

Similarly, in Turtle Island Restoration Network v. U.S. Dep't of Commerce, 438 F.3d 937 (9th Cir. 2006), the Ninth Circuit held the exclusive jurisdiction of the Magnuson Act applicable even though plaintiffs framed their objection as being to the procedure of reopening a fishery. Since the Magnuson Act required exhaustion of administrative remedies for objections to "actions that are taken by the Secretary under regulations which implement a fishery management plan," 16 U.S.C. § 1855(f)(2), the plaintiffs could not avoid this requirement by not mentioning the Act in their pleadings "while in substance challenging the regulations." Turtle Island, 438 F.3d at 945.

In sum, the Court finds plaintiffs' attempt to plead around the statutorily-mandated review process by framing their claim as one challenging the process of determining tolerance levels, not the final result, to be similarly unavailing. Rather, the Court concludes that plaintiffs' claim directly challenges the establishment of tolerance levels for alfalfa hay and seed and therefore falls directly under the purview of the exclusive review provision of section 346a(h).

Despite plaintiffs' best efforts, the claim here is not properly characterized as a systematic or overarching challenge to the policies used by the EPA in establishing tolerance levels. In American Farm Bureau, for example, the plaintiffs made broad procedural challenges to setting tolerance levels. Here, however, plaintiffs merely challenge two particular tolerance determinations; indeed, there is no mention of improper policies or generalized procedural concerns. See New York, 350 F. Supp. 2d at 445 ("[P]laintiffs' complaints in the present action, unlike those in ... American Farm Bureau, do not merely

12

challenge general 'policies' of the agency, but rather, its failure to apply the correct standard to particular reassessments.").

Likewise, in <u>McNary v. Haitian Refugee Center</u>, the Supreme Court addressed a similar issue, pitting the exclusive review provision of an administrative act against the jurisdictional avenues available to constitutional and statutory challenges to general procedures. 498 U.S. 479 (1991). The Supreme Court found district court jurisdiction appropriate, but hinged its analysis on the notion that the narrow and focused administrative remedy was not structured to entertain generalized, systematic complaints against "policies and practices in processing SAW applications depriv[ing] [plaintiffs] of their statutory and constitutional rights." <u>Id.</u> at 490 (internal citation omitted.) Since the suit did "not challenge any individual determination of any application for SAW status but rather attack[ed] the manner in which the entire program is being implemented," the allegations were beyond the scope of administrative review. <u>Id</u>. at 488.[2] <u>See also</u> <u>California v. Reilly</u>, 750 F. Supp. 433, 436\ (E.D. Cal 1990) (suit objected to "systemic EPA policy of nonenforcement" of safety criteria to large categories of pesticides, and therefore did not fall within exclusive administrative review provision). As discussed above, however, plaintiffs here do not challenge the manner in which an entire program is implemented or systematic policies. Instead, plaintiffs *do* challenge individual determinations. <u>See</u> <u>Compl</u>. ¶ 199 ("EPA failed to consult formally or informally with [Fish and Wildlife Service] in connection with both regulatory decisions setting tolerances for glyphosate."). Thus, the Court finds these

---

[2] Plaintiffs also cite <u>California ex. rel. Younger v. Andrus</u>, 608 F.2d 1247 (9th Cir. 1979) in which the Ninth Circuit declined to apply an administrative review provision to a NEPA claim against agency action taken under a statute that limited review to the approval of a "leasing program pursuant to section 1344 of this title." <u>Id.</u> at 1249. Plaintiffs claim that <u>Andrus</u> stands for the proposition that a "claim under one law is proper in district court even if it is related to an agency action authorized by another law that assigned exclusive jurisdiction to the appellate courts." Pls.' Opp. at 18. <u>Andrus</u>, however, differs materially from this case in several respects. First, the court based its reasoning on the fact that the plaintiff did not directly challenge agency action in making its NEPA claim. <u>Andrus</u>, 608 F.2d at 1249. Here, plaintiffs directly challenge the EPA's determination of two tolerance levels. Second, the relevant portion of the <u>Andrus</u> per curiam opinion is dicta because the court held that the plaintiff lacked standing. In light of the fact that it has never been cited for plaintiffs' proposed interpretation of the case in the 27 years since it was decided, the Court finds the brief discussion of a limited review provision in dicta to be non-binding and unpersuasive.

13

authorities to be inapposite and unpersuasive. Accordingly, like in New York, the Court finds that plaintiffs' claim falls squarely within section 346a(h)'s exclusive review provision.

### 2. Meaningful Review Under Section 346a

In the alternative, plaintiffs argue that the exclusive review provision should not apply because meaningful review is not obtainable "under this subsection" since section 346a pertains only to human health concerns. Instead, plaintiffs contend that a collateral attack on ESA grounds is properly brought in the district court because the administrative review available under that statute is limited in its subject matter to a pesticide's danger to consumers' health. Such review, plaintiffs argue, would be an insufficient means of addressing their endangered species claims.

Indeed, the impossibility of meaningful administrative review was a motivating factor in the McNary Court's decision to allow district court jurisdiction without administrative exhaustion. Noting the narrow scope of the administrative review provision, the Court concluded that, "if not allowed to pursue their claims in the District Court, respondents would not as a practical matter be able to obtain meaningful judicial review of their application denials or of their objections to INS procedures." McNary, 498 U.S. at 496. Similarly, Thunder Basin Coal acknowledged that claims "wholly collateral to a statute's review provisions and outside the agency's expertise" may not be found to be limited by statutory review provisions and in such a case district court jurisdiction is proper. Thunder Basin Coal, 510 U.S. at 212 (internal citations omitted.)

Here, however, the EPA has both the expertise and administrative infrastructure to address the merits of plaintiffs' claims in the first instance. Under the ESA, the Fish and Wildlife Service explains that the action agency–in this case the EPA–has the exclusive authority to determine whether consultation is necessary. 51 Fed. Reg. 19926, 19949 (June 3, 1986) ("The Federal agency has the ultimate duty to ensure that its actions are not likely to jeopardize listed species ... [and] makes the final decision on whether consultation is required."). Plaintiffs cannot argue on the one hand that their claim has merit–that ESA consultation was required in the EPA's action–and on the other hand that the EPA does not

14

have the authority or expertise to hear claims about endangered species. Moreover, in this particular case, the EPA does have the required environmental expertise: the very statistics that plaintiffs cite to show the danger glyphosate poses to endangered species were authored by the EPA itself. Rep. at 7.

Although the subject matter of section 346a may only pertain to human health concerns, the plaintiffs cite to no statutory language limiting the scope of administrative review to that subject matter. As long as the administrative review process does not preclude the claim, the EPA can meaningfully review it in the first instance. In fact, in New York, the court recognized that not only does the administrative review provisions fail to limit the types of appropriate objections, in reality "the statute provides an expansive administrative appeal process for review of tolerance reassessments." 350 F. Supp. 2d at 442. The New York court further noted that subsection (g), the same subsection under which plaintiffs' claim falls here, does not "restrict[] the grounds on which petitions or objections may be filed." Id. In fact, the text of the statute in no way indicates that only particular types of objections–i.e., those having to do with the specific provisions of section 346a–may be reviewed through the administrative appeal process.[3] As a result, the Court finds that the administrative review process established by section 346a of the FFDCA does not limit the types of objections it may entertain. Furthermore, because the EPA has the necessary infrastructure and expertise to hear an ESA claim, the Court concludes that meaningful review is available through the administrative review process.

//
//
//

---

[3] Plaintiffs improperly interpret the phrase "in this subsection" as it is used in section 346a(h)(5). First, the subsection at issue is subsection (h) of section 346a, not the entirety of section 346a. Second, subsection (h) establishes the judicial review process for appeals of agency decisions on administrative review. It does not relate to the substantive requirements of section 346a. Moreover, it necessarily incorporates the administrative review provisions applicable to objections to the establishment of tolerance levels, which is not otherwise limited by statute. Finally, the addition of subsection (h)(5) in 1996 has been interpreted by other courts in addition to this Court to strengthen the exclusive jurisdiction of the EPA over applicable appeals.

15

# CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs' claim falls within the exclusive review provision of section 346a(h). The Court, therefore, lacks subject matter jurisdiction to hear their claim. Thus, defendant's Motion to Dismiss is hereby GRANTED. Because the exclusive jurisdiction clause of the FFDCA places this claim outside the Court's subject matter jurisdiction, the Court need not reach of issue of plaintiffs' standing.

**IT IS SO ORDERED.**

Dated: July 26, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE