IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEERTSON FARMS INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>MIKE JOHANNS, et al.,<br><br>    Defendants.<br>_____/ | No. C 06-01075 CRB<br><br>**PRELIMINARY INJUNCTION ORDER** |

By Memorandum and Order dated February 13, 2007, the Court concluded that the federal defendants violated the National Environmental Protection Act ("NEPA") by failing to prepare an environmental impact statement ("EIS") before deregulating Roundup Ready alfalfa. The Court granted plaintiffs' motion for summary judgment because of the potential significant environmental impact of gene transmission; specifically, the acknowledged risk that the genetically engineered gene will "contaminate" organic and conventional alfalfa. The Court also found that defendants had failed to adequately consider the deregulation decision's impact on the development of Roundup resistant weeds.

The parties subsequently submitted competing proposed final judgments, and several third parties moved to intervene in the remedial phase of this lawsuit. At a hearing on March 8, 2007, the Court granted the proposed intervenors' motions and agreed to give them the opportunity "to present evidence to assist the court in fashioning the appropriate scope of

1   whatever relief is granted." Forest Conservation Council v. U.S. Forest Service, 66 F.3d
2   1489, 1496 (9th Cir. 1995).  The immediate dilemma, however, is what preliminary relief to
3   issue while the Court is contemplating the form of the final judgment.  The issue is especially
4   urgent because many growers have already planted or are about to plant Roundup Ready
5   alfalfa.

### A.     The preliminary injunction

"In the run of the mill NEPA case, the contemplated project, whether it be a new dam or a highway extension, is simply delayed until the NEPA violation is cured." Idaho Watersheds Project v. Hahn, 307 F.3d 815, 833 (9th Cir. 2002); see also National Parks & Conservation Ass'n v. Babbitt, 241 F.3d 722, 737-38 & n.18 (9th Cir. 2001) (holding that "where an EIS is required, allowing a potentially environmentally damaging project to proceed prior its preparation runs contrary to the very purpose of the statutory requirement;" however, "in 'unusual circumstances' an injunction may be withheld, or, more likely, limited in scope"); Forest Conservation Council, 66 F.3d at 1496 (holding that the defendants "should be allowed to present evidence to the court that 'unusual circumstances' weigh against the injunction sought"); Thomas v. Peterson, 753 F.2d 754, 764 (9th Cir.1985) (stating that "absent 'unusual circumstances,' an injunction is the appropriate remedy for a violation of NEPA's procedural requirements").

One circumstance that makes this case not so "run of the mill" is that in reliance on the federal defendants' June 2005 deregulation decision, some growers have already planted Roundup Ready alfalfa.  These plantings have occurred because plaintiffs did not seek an injunction prior to the Court's ruling on the merits of their claim.  After weighing the balance of harms, the Court will not order these growers to remove the alfalfa, and, indeed, plaintiffs do not ask for such injunctive relief.  Nor will the Court prohibit these growers from harvesting, using, or selling any Roundup Ready alfalfa that has already been planted. See Seattle Audubon Soc'y v. Evans, 771 F.Supp. 1081, 1087-95 (W.D. Wash.1991) (taking logging industry interests into account in conducting equitable balancing for environmental

law violation, resulting in injunction of future timber sales, but not existing sales), aff'd, 952 F.2d 297, 298 (9th Cir. 1991).

In most respects, however, this is a "run of the mill" NEPA case. Prior to the federal defendants' June 2005 deregulation decision, Roundup Ready alfalfa could not be grown absent a United States Department of Agriculture permit. For those growers who have not yet planted Roundup Ready alfalfa, or who intend to plant additional acres of the crop, an injunction prohibiting the planting of the genetically engineered crop pending the federal defendants' completion of the EIS, or at least pending the Court's fashioning of permanent injunctive relief, simply delays the project–in this case, delays the switch to Roundup Ready alfalfa. In other words, an injunction prohibiting future plantings maintains the status quo.

Neither the intervenors nor the government has identified any "unusual circumstances" that would warrant allowing an *increase* in the number of acres planted with Roundup Ready alfalfa while the Court considers the scope of permanent injunctive relief. At oral argument the Court asked counsel for the intervenor growers what harm farmers would suffer if the Court enjoined the *future* planting of alfalfa. Counsel responded that some growers might have already purchased the seeds for planting, and thus would lose their investment, although he could not answer whether the growers would ultimately be reimbursed for such loss by insurance or the sellers. After the hearing the intervenors submitted an additional declaration opining that the growers do not have any contractual right to reimbursement. Counsel also explained that an injunction would prevent these growers from planting the alfalfa variety of their choice. An injunction, however, always prevents someone from doing what he would prefer, whether it be building a dam, completing a highway project, or planting a genetically engineered crop; the growers' disappointment in the delay to their switch to Roundup Ready alfalfa is not an interest which outweighs the potential environmental harm identified in the Court's February 13, 2007 Memorandum and Order. See National Parks & Conservation Ass'n, 241 F.3d at 737 ("When the proposed project may significantly degrade some human environmental factor, injunctive relief is appropriate").

3

Defendants and intervenors also complain that an order prohibiting an increase in the acreage of Roundup Ready alfalfa, that is, prohibiting any future plantings, will cause those growers who are about to plant such alfalfa "to scramble to make last-minute changes to farm planting plans and to find appropriate seed." See Second Declaration of Mark H. McCaslin ¶ 4. It bears repeating that these are growers who are *replacing* conventional alfalfa with Roundup Ready alfalfa; as the intervenors conceded at oral argument, alfalfa is a perennial crop that is only planted every three to four years. Thus, these growers' primary experience is with non-genetically engineered alfalfa varieties.

In any event, to minimize the harm to those growers who intend to imminently plant Roundup Ready alfalfa, the Court will preliminarily enjoin all future planting of Roundup Ready alfalfa beginning **March 30, 2007.** Those growers who intend to plant Roundup Ready alfalfa in the next three weeks, *and have already purchased the seed*, may plant the seed. All growers intending to plant after March 30, 2007, or who have not yet purchased the seed, must plant non-genetically engineered alfalfa.

Accordingly, the federal defendants' June 2005 decision deregulating Roundup Ready alfalfa is VACATED and Roundup Ready alfalfa is once again a regulated article. The federal defendants shall issue the appropriate notices notifying Roundup Ready alfalfa sellers and growers that no Roundup Ready alfalfa seed may be planted after March 30, 2007. In addition, only that seed which has already been purchased by growers may be planted prior to March 30, 2007. All sales of Roundup Ready alfalfa seed are prohibited pending the Court's issuance of permanent injunctive relief.

### B.     Permanent Injunctive Relief

Before determining the scope of the final judgment, the Court will consider whatever additional evidence the intervenors wish to provide. All such evidence, and any supplemental supporting memoranda, must be filed on or before March 23, 2007. If the government wishes to submit additional evidence or a further memorandum, it must do so by the same date. Plaintiffs' response, if any, must be filed by April 6, 2007. The Court will hear oral argument on the appropriate permanent injunctive relief at 11:00 a.m. on Friday,

4

April 27, 2007.  The Court will advise the parties prior to the hearing if any live testimony is required.  The Court is not ordering any discovery.

**IT IS SO ORDERED.**

Dated: March 12, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE