1
2
3
4
5
6
7
8                IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   GEERTSON SEED FARMS, et al.,              No. C 06-01075 CRB

12            Plaintiffs,                      **ORDER AWARDING ATTORNEYS'**
                                               **FEES**
13      v.

14   MIKE JOHANNS, et al.,

15

16            Defendants.
     _____/

17

18          Plaintiffs filed a second motion for attorneys' fees in this protracted litigation about

19   the deregulation of RRA (Roundup Ready alfalfa).  See generally 2d Fee Mot. (dkt. 303).

20   This Court referred the Motion to Magistrate Judge Laporte for settlement purposes.  See

21   Referral Order (dkt. 342) at 1.  The parties have been unable to settle, however, and this

22   Court now rules on the Motion.

23   **I.      BACKGROUND[1]**

24          In 2006, Plaintiffs (alfalfa growers and environmental groups) brought suit in this

25   Court challenging the decision of Defendant U.S. Department of Agriculture, Animal Health

26   and Inspection Service ("APHIS") to deregulate RRA, alfalfa genetically engineered to resist

27   the herbicide Roundup.  See Geertson Seed Farms v. Johanns. No. 06-01075, 2007 WL

28

     _____

           [1]  Because the parties are familiar with the facts of this case, the Court includes only a brief
     background.

518624, *1 (N.D. Cal. Feb. 13, 2007).  Plaintiffs brought claims under the National

Environmental Policy Act ("NEPA"), the Endangered Species Act ("ESA"), and the Plant

Protection Act ("PPA").  Id.  Plaintiffs' claims related to APHIS having deregulated RRA

without having first prepared an environmental impact statement ("EIS").  Id.  The Court

granted summary judgment for Plaintiffs on their NEPA claim, finding that APHIS was

required to prepare an EIS before deregulating RRA.  Id. at *12.  The Court therefore held

that it "need not address plaintiffs' claims under the ESA and PPA," and dismissed those

claims without prejudice.  Id.  The Court then invited the parties to meet and confer and to

submit a proposed judgment to the Court.  Id.  Defendants' proposed judgment "would have .

. . expressly [allowed] a continued planting of RRA subject to certain limited conditions."

See Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2751 (2010).

     The Court rejected Defendants' proposed judgment, and ultimately fashioned its own

remedy, which consisted of: (1) vacating APHIS's June 2005 deregulation decision (the

"vacatur"); (2) ordering the government to prepare an EIS before making a decision on the

deregulation petition; (3) enjoining nationally the planting of any RRA pending the

completion of the EIS and decision on the deregulation petition; and (4) imposing certain

conditions on the handling and identification of already-planted RRA.  See Geertson Farms

Inc. v. Johanns, No. 06-1075, 2007 WL 1302981, *9 (N.D. Cal. May 3, 2007); Farms Inc. v.

Johanns, No. 06-1075, 2007 WL 1839894 (N.D. Cal. June 26, 2007) (amending the May 3,

2007 Order).

     Defendants appealed, "challenging the scope of the relief granted but not disputing the

existence of a NEPA violation."  See Monsanto, 130 S. Ct. at 2752.  A divided panel of the

Ninth Circuit affirmed.  See Geertson Seed Farms v. Johanns, 541 F.3d 938 (9th Cir.

2008); Geertson Seed Farms v. Johanns, 570 F.3d 1130 (9th Cir. 2009) (amending the 2008

opinion).  Defendants filed a petition for writ of certiorari, arguing that this Court had

"imposed . . . a permanent nationwide injunction against any further planting of a valuable

genetically-engineered crop, despite overwhelming evidence that less restrictive measures

proposed by an expert federal agency would eliminate any non-trivial risk of harm."  Petition

United States District Court
For the Northern District of California

1  for Writ of Certiorari, <u>Monsanto Co. v. Geertson Seed Farms</u>, No. 09-475, 2009 WL

2  3420495, at *i (2009).  The Supreme Court granted the petition, <u>see</u> <u>Monsanto Co. v.</u>

3  <u>Geertson Seed Farms</u>, 130 S. Ct. 1133 (Mem) (No. 09-475), and ultimately reversed, <u>see</u>

4  <u>Monsanto</u>, 130 S. Ct. 2743.

5        The Supreme Court made the following holdings.  First, it rejected Plaintiffs'

6  argument that Defendants lacked standing.  <u>Id.</u> at 2752.  Second, it rejected Defendants'

7  argument that Plaintiffs lacked standing.  <u>Id.</u> at 2754.  Third, it held that this Court had erred

8  in enjoining APHIS from partially deregulating RRA until an EIS had been completed.  <u>Id.</u> at

9  2757.  The basis for this holding was that "[i]n our view, none of the traditional four factors

10  governing the entry of permanent injunctive relief supports the District Court's injunction

11  prohibiting partial deregulation."  <u>Id.</u> at 2758.  Finally, the Court held that this Court had

12  erred in entering a nationwide injunction against planting RRA, both because (1) foreclosing

13  any possibility of partial deregulation was wrong, then enjoining all parties from acting in

14  accordance with such a decision was also wrong, and (2) the injunction had no "meaningful

15  practical effect independent of [the] vacatur," and so the "drastic remedy" of an injunction

16  was unwarranted.  <u>Id.</u> at 2761.

17        Following the proceedings in this Court, Plaintiffs moved for fees and costs under the

18  Equal Access to Justice Act ("EAJA").  1st Fee Mot. (dkt. 261).  The Court deferred ruling

19  on that fee motion pending the outcome of the appeal.  <u>See</u> Civil Minutes (dkt. 275).  That

20  decision was in accordance with Defendants' Motion to Stay, in which Defendants argued

21  that a stay "would enhance the possibility of a negotiated fee settlement by substantially

22  increasing the amount of information that the parties could use."  <u>See</u> Mot. to Stay (dkt. 264)

23  at 4.

24        After the Supreme Court's ruling in 2010, Plaintiffs brought their second fees motion,

25  requesting a total award of $1,719,737.80, which included attorneys' fees and costs for the

26  district court and appellate portions of the case, and also fees on fees.[2]  <u>See</u> Kimbrell Decl. in

27  Support of 2d Fee Mot. (dkt. 303) ¶¶ 34-35; Kimbrell Decl. in Support of Reply (dkt. 339).

28

---

[2] Fees for time spent litigating the fees motions.

United States District Court
For the Northern District of California

1    The Court referred the parties to Magistrate Judge Laporte, with some instructions intended

2    to guide the parties toward a settlement.  See generally Referral Order.  After the parties

3    failed to settle, Plaintiffs filed a supplemental EAJA brief, explaining that they seek a

4    minimum award of $1,426,325.29, which reflects a 20% reduction in the attorneys' fees

5    award, and includes all costs and fees on fees.  Pls.' Supp. Br. (dkt. 362) at 18.  Defendants

6    argue that Plaintiffs are entitled to only $829,422.  Dfs.' Supp. Br. (dkt. 361) at 16.

7    **II.      LEGAL STANDARD**

8              The EAJA provides that "a court shall award to a prevailing party other than the

9    United States fees and other expenses . . . unless the court finds that the position of the

10   United States was substantially justified or that special circumstances make an award

11   unjust."[3]  28 U.S.C. § 2412(d)(1)(A).  The Supreme Court in Hensley v. Eckerhart instructed

12   that "[t]he most useful starting point for determining the amount of a reasonable fee is the

13   number of hours reasonably expended on the litigation multiplied by a reasonable hourly

14   rate."  461 U.S. 424, 433 (1983).  Counsel for prevailing parties are to make a concerted

15   effort to exclude excessive, redundant, or otherwise unnecessary hours.  Id. at 434.

16   However, "the product of reasonable hours times a reasonable rate does not end the inquiry,"

17   in light of other considerations that might lead a court to adjust a fee award up or down, such

18   as the "results obtained."  Id.  The Court explained that "[t]his factor is particularly crucial

19   where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his

20   claims for relief."  Id.  When that happens, courts are to ask (1) whether Plaintiff failed to

21   prevail "on claims that were unrelated to the claims on which he succeeded"; and (2) whether

22   Plaintiff "achieve[d] a level of success that makes the hours reasonably expended a

23   satisfactory basis for making a fee award.  See id.  Where Plaintiffs' claims for relief

24   "involve a common core of facts" or are "based on related legal theories," a court may not

25   view the case as a series of discrete claims, and should instead "focus on the significance of

26   the overall relief."  Id. at 435.

27   ────────────────

28            [3] Defendants do not contend that their position was substantially justified or that any special circumstances would make an attorneys' fees award unjust.  Therefore, Plaintiffs are entitled to recover their fees and costs, and the only issue before the Court is the amount to which they are entitled.

1    Where a plaintiff has achieved only partial success, "the most critical factor is the

2    degree of success obtained." Id. at 436.  "A reduced fee award is appropriate if the relief,

3    however significant, is limited in comparison to the scope of the litigation as a whole." Id. at

4    440.  Specifically, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all

5    respects from his successful claims, the hours spent on the unsuccessful claim should be

6    excluded." Id. at 440.  However, "[w]here a lawsuit consists of related claims, a plaintiff

7    who has won substantial relief should not have his attorney's fee reduced simply because the

8    district court did not adopt each contention raised." Id.[4]  A plaintiff need not "receive all

9    relief requested" to receive "a fee award based on all hours reasonably expended if the relief

10   obtained justified that expenditure of attorney time." Id. at 435 n.11.  The Court in Hensley

11   did not proscribe a method for reducing a fee award, but explained that a district court "may

12   attempt to identify specific hours that should be eliminated, or it may simply reduce the

13   award to account for the limited success." Id. at 436-37.

14   A district court has discretion to determine the amount of a fee award, and in

15   awarding fees, must set forth a "concise but clear explanation of its reasons for the fee

16   award." Id. at 437.  This does not mean, however, that a district court must "set forth an

17   hour-by-hour analysis of the fee request." Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th

18   Cir. 1992).  Rather, "when faced with a massive fee application the district court has the

19   authority to make across-the-board percentage cuts either in the number of hours claimed or

20   in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'"

21   Id. (citing N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir.

22   1983)).

23   A district court choosing to reduce fee awards by percentages subjects its fee award to

24   heightened scrutiny, and therefore must "set forth a 'concise but clear' explanation of its

25   reasons for choosing a given percentage reduction." Id. at 1400.  Choosing an arbitrary

26   percentage figure without independently reviewing the movant's billing records is an abuse

27   _____

28       [4] See also id. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.")

of discretion.  Id. at 1401 (finding that a district court abused its discretion because it, when "faced with an admittedly voluminous paper record, threw up its hands and relied on plaintiffs' suggested, yet admittedly arbitrary, ten percent figure without itself reviewing the record").

**III.    DISCUSSION**

In its Referral Order, this Court made certain findings intended to guide the parties in settlement.  First, this Court found that Plaintiffs are the prevailing party and entitled to fees under the Equal Access to Justice Act (EAJA).  Referral Order at 1, 4-5.  Second, this Court found that Plaintiffs are entitled to market rates rather than EAJA rates because the case involved "a sub-specialty of environmental law" and Plaintiffs' expertise was both vital to the case and unavailable at the EAJA adjusted rate.  Id. at 6.  Third, this Court found that the ESA and PPA claims were related to the NEPA claims, and that the vacatur and injunctive relief were also related.  Id. at 8-9.  Fourth, this Court found that it would be "appropriate . . . that the fee award reflect Plaintiffs' 'limited success' of having won a vacatur but having lost the injunction."  Id. at 10 (citing Hensley, 461 U.S. at 437).  The Court expressly declined to address whether the Plaintiffs had made an adequate "effort to exclude excessive, redundant, or otherwise unnecessary hours."  Id. at 6.

In determining the fee award to which Plaintiffs are entitled, the Court must resolve four separate issues: (A) whether Plaintiffs adequately excluded "excessive, redundant, or otherwise unnecessary hours"; (B) what reduction in fees would reasonably reflect Plaintiffs' "limited success" in obtaining a vacatur, but not an injunction; (C) whether the market rates set forth in Plaintiffs' briefs and declarations are appropriate; and (D) whether Plaintiffs should recover their requested costs and fees on fees.  As discussed below, the Court finds that Plaintiffs adequately excluded unnecessary time from their billing records, that a 10% reduction in fees reasonably reflects Plaintiffs' "limited success" after appeal, that the market rates proposed by Plaintiffs are reasonable, that Plaintiffs should recover their requested costs, and that a 10% reduction in fees on fees would reasonably reflect Plaintiffs' limited success on their attorneys' fees motions.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**A.      Exclusion of "Excessive, Redundant, and Unnecessary" Hours**

2      The Supreme Court in <u>Hensley</u> instructed that "[t]he most useful starting point for

3  determining the amount of a reasonable fee is the number of hours reasonably expended on

4  the litigation multiplied by a reasonable hourly rate."  461 U.S. at 433.  And "[c]ounsel for

5  prevailing parties are to make a concerted effort to exclude excessive, redundant, or

6  otherwise unnecessary hours."  Referral Order at 6 (citing <u>Hensley</u>, 461 U.S. at 433).  The

7  fee applicant bears the burden of submitting evidence of the hours expended during

8  litigation.  <u>Hensley</u>, 461 U.S. at 433.  And the "party opposing the fee application has a

9  burden of [submitting] evidence to the district court challenging the accuracy and

10  reasonableness of the hours charged or the facts asserted by the prevailing party in its

11  submitted affidavits."  <u>Gates</u>, 987 F.2d at 1397-98 (citing <u>Blum v. Stenson</u>, 465 U.S. 886,

12  892 n.5 (1984)).

13      Here, Plaintiffs have submitted line-by-line billing records for all of their attorneys

14  and law clerks.  <u>See</u> Rostov Decl. in Support of 1st Fee Mot. (dkt. 262), Ex. A-B; Kimbrell

15  Decl. in Support of 2d Fee Mot., Ex. A.  Based on its review of these records, the Court finds

16  that Plaintiffs have met their burden of evidencing the hours expended during the litigation.

17  <u>See Hensley</u>, 461 U.S. at 433.  Plaintiffs have reduced the total time billed by 10% in an

18  effort to exclude excessive and redundant hours.  <u>See</u> Pls.' Supp. Br. at 6; Kimbrell Decl. in

19  Support of 2d Fee Mot. ¶ 24.  Defendants argue, however, that Plaintiffs should be required

20  to reduce the attorney hours generated during the "initial judgment period"[5] by an additional

21  25% merely because those hours are excessive on their face.[6]  Dfs.' Supp. Br. at 11.

22  Defendants argue that Plaintiffs both overstaffed the case with five attorneys and two law

23

24  _____

25      [5] The period during which the parties disputed the issue of an appropriate equitable remedy.  <u>See</u>
Dfs.' Supp. Br. at 11.

26      [6] "Mr. Rostov's 338.14 hours are equivalent to working solely on the vacatur and other initial
27  remedy issues for 42.27 consecutive 8-hour days; Mr. Golden's 269.82 hours are equivalent to working
solely on these issues for 33.73 consecutive 8-hour days; Mr. Mendelson's 69.71 hours are equivalent
28  to working solely on these issues for 8.71 days; and Mr. Kimbrell's 66.25 hours are equivalent to
working on remedy issues for 8.3 consecutive 8-hour days.  On their face, these hours are both wasteful
and excessive."  Reply to Supp. Br. (dkt. 365) at 11.

7

United States District Court
For the Northern District of California

clerks and billed unnecessary hours during the initial judgment period.[7]  See id.  The Court

finds that Plaintiffs' staffing and billed hours were reasonable, and rejects Defendants'

argument that Plaintiffs' billing during the initial judgment period was facially excessive.

As Plaintiffs point out, Defendants themselves staffed four attorneys on the case, and

Defendant-Intervenors staffed an additional ten attorneys to oppose Plaintiffs' suit.  See Pls.'

Supp. Br. at 10.  Staffing five attorneys and two law clerks to oppose fourteen attorneys and

multiple defendants does not strike the Court as excessive.  Furthermore, the number of hours

Plaintiffs billed during the initial judgment period was reasonable.  Spending approximately

853 hours of attorney and law clerk time, see Dfs.' Supp. Br. at 11, during a 80-day period in

which the parties filed 2,369 pages of material in 117 docket entries, see Pls.' Supp. Br. at

10, seems entirely appropriate.  Although Defendants attempt to minimize the importance of

disputing remedies during the initial judgment period, see Dfs.' Supp. Br. at 11, they

themselves "filed seven separate motions, with a total of 52 exhibits and 22 declarations or

directed testimonies, and 12 memoranda, objections, replies, or affidavits" relating to the

issue of remedies, Pls.' Supp. Br. at 10.

In sum, the hours billed by Plaintiffs during the initial judgment period reflects that

Plaintiffs' team as a whole dedicated approximately 10-12 hours a day working on a high-

profile, first-impression case during an extremely litigious period.  Because this is not, as

Defendants contend, facially excessive, Defendants have failed to meet their burden of

---

[7] Defendants also argue that Plaintiffs "block-billed" their time during the district court phase of the case because they did not distinguish between billing entries reflecting work on the merits of the case and billing entries reflecting work on appropriate remedies.  See Dfs.' Supp. Br. at 9.  However, they point to no authority requiring Plaintiffs to create separate billing entries for their work on the merits and their work on remedies.  Instead, both the merits and remedies are inextricably related to the claim as a whole.  As the Supreme Court recognized in Hensley, "related" claims for relief "involve a common core of facts [or are] based on related legal theories," and therefore attorneys will find it "difficult to divide hours expended on a claim-by-claim basis."  461 U.S. at 435.  It seems unlikely that the Hensley Court intended attorneys to divide their hours between merits and relief given that it did not intend them to divide their time between related claims.  Furthermore, the Court in Hensley emphasized that it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested.  For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all the hours reasonably expended if the relief obtained justified that expenditure of time."  Id. at 435 n.11 (emphasis added).  This also suggests that merits and relief are "related."

United States District Court
For the Northern District of California

1    rebutting the reasonableness of the hours billed.  See Gates, 987 F.2d at 1397-98 (citing

2    Blum v. Stenson, 465 U.S. at 892 n.5).

3         **B.    Plaintiffs' "Limited Success" and Appropriate Reduction**

4         "[T]he extent of a plaintiff's success is a crucial factor in determining the proper

5    amount of an award of attorney's fees . . . ."  Hensley, 461 U.S. at 440.  "[W]here the

6    plaintiff achieved only limited success, the district court should award only that amount of

7    fees that is reasonable in relation to the results obtained."  Id.  As this Court stated in its

8    Referral Order, "[v]acatur was undoubtedly a valuable result for Plaintiffs, as it resulted in

9    'virtually no RRA [being] grown or sold until such time as a new deregulation decision is in

10   place, and . . . any party aggrieved by a hypothetical future deregulation decision [having]

11   ample opportunity to challenge it.'"  Referral Order at 9 (citing Monsanto, 130 S. Ct. at

12   2761).  Yet "vacatur alone is not as broad as this Court's initial remedy of vacatur and

13   injunctive relief," which is why this Court previously encouraged the parties to settle on a fee

14   award that would "reflect Plaintiffs' 'limited success' of having won a vacatur but having

15   lost the injunction."  Id. at 10.

16        The parties have been unable to agree on an appropriate fee reduction.  Defendants

17   argue that the Court should treat the time spent during the district court phase differently

18   from the time spent on appeal, and reduce Plaintiffs' hours during the district court phase by

19   35% and reduce the fees Plaintiffs seek for their appellate work by 75%.  See Dfs.' Supp. Br.

20   at 10-11.  These reductions, Defendants argue, will reflect: (1) that Plaintiffs spent a great

21   deal of time during the district court phase seeking two injunctive remedies that they later

22   lost on appeal, and (2) Plaintiffs' unsuccessful opposition of APHIS's appeal to the Supreme

23   Court.  See id.

24        Plaintiffs persuasively argue, however, that Supreme Court precedent on attorneys'

25   fees does not support separating the case in trial and appellate phases.  See Pls.' Supp. Br. at

26   11.  Rather, the Hensley Court emphasized that where multiple claims for relief are "related,"

27

28

9

United States District Court
For the Northern District of California

1  as they are here,[8] the "overall relief" obtained is what ultimately matters for a fee award.  461

2  U.S. at 435.  Moreover, the Ninth Circuit has held that "[j]ust as time spent on losing claims

3  can contribute to the success of other claims, time spent on a losing stage of litigation

4  contributes to success because it constitutes a step toward victory."  Cabrales v. City of Los

5  Angeles, 935 F.2d 1050, 1052-53 (9th Cir. 1991).[9]  Because Plaintiffs are the prevailing

6  party, even after the Supreme Court reversed the grant of injunctive relief, see Referral Order

7  at 1, the Court must determine what reduction in fees would accurately reflect Plaintiffs'

8  limited success in having ultimately obtained a vacatur and not injunctive relief.  See

9  Hensley, 461 U.S. at 436 ("the most critical factor is the degree of success obtained").

10         Plaintiffs initially proposed in their supplemental EAJA brief that the Court reduce

11  their entire fee award (including both the district court and appellate portions) by at most

12  20% to reflect the difference between obtaining an injunction and vacatur together, and a

13  vacatur alone.  See Pls.' Supp. Br. at 11.  Complicating matters, however, is Judge Laporte's

14  recent recommendation in an almost identical case, involving the same parties, that Plaintiffs

15  recover all of their attorneys' fees because vacatur was an "excellent result," despite the

16  district court's rejection of their claim for injunction relief.  See Center for Food Safety, et al.

17  v. Vilsack, et al. ("Sugar Beets I"), No. 08-00484 (dkt. 648).  In Sugar Beets I, like in this

18  case, Plaintiffs challenged Defendants' complete deregulation of a genetically-engineered

19  crop under the NEPA, seeking both a vacatur and injunction.  Id. at 1-2.  "Finding that the

20  vacatur was sufficient to redress Plaintiffs' injuries, Judge White denied Plaintiffs' requested

21

22         [8] This Court specifically found Plaintiffs' claims for relief to be related in its Referral Order.
See Referral Order at 8-9.

23         [9] The Court recognizes that Cabrales involved a plaintiff who succeeded on her final appeal
24  after receiving an adverse ruling, whereas this case involves plaintiffs who lost on appeal.  See Dfs.'
Supp. Sugar Beets Br. (dkt. 370) (citing 935 F.2d at 1053).  If the appeal in this case had involved only
25  a challenge to the injunctive relief, and not the vacatur, then Cabrales might not support treating the
district and appellate portions of the case as an inclusive whole for the purpose of awarding fees.  As
26  Defendants explicitly argued to the Supreme Court, however, "the district court's vacatur order is
inextricably tied to the scope of the injunction and, indeed, is part of the same judgment."  Reply at *4,
27  No. 09-475, 2010 WL 1619255 (2010).  Defendants even went on to explain that when they "appealed
the judgment and argued that the injunction was invalid,  they therefore appealed and challenged the
28  scope of the vacatur as well."  Id.  Because the Supreme Court chose not to limit this Court's vacatur,
Plaintiffs succeeded in preserving that remedy on appeal.  Therefore, just as in Cabrales, Plaintiffs' time
spent on the "losing stage" of the litigation ultimately contributed to their victory.

10

United States District Court
For the Northern District of California

1    permanent injunctive relief," and then referred Plaintiffs' motion for attorneys' fees to

2    Magistrate Judge Laporte.  Id. at 2.  Magistrate Judge Laporte found that in obtaining a

3    vacatur, Plaintiffs had achieved "excellent results"; the vacatur sufficiently redressed their

4    injury and injunctive relief was unnecessary.  See id. at 8.  She therefore found that Plaintiffs

5    were "entitled to a 'fully compensable fee.'"  Id.  After Plaintiffs in this case had submitted

6    their supplemental EAJA brief to this Court proposing a 20% reduction in their fee award,

7    see Pls.' Supp. Br., they notified the Court of Magistrate Judge Laporte's report in Sugar

8    Beets I, see Pls.' Stmt. of Recent Decision (dkt 368).  They now argue that the reasoning in

9    that case supports full compensation in this case[10] as well: they achieved the exact same

10   "excellent result" of obtaining a vacatur.  See Pls.' Supp. Sugar Beets Br. (dkt. 371).

11          Magistrate Judge Laporte's Report and Recommendation to Judge White has

12   persuaded this Court that Plaintiffs' initially proposed 20%-reduction is excessive; yet a fully

13   compensatory fee is also inappropriate.  In bringing this lawsuit, Plaintiffs sought both a

14   rescission of the deregulation decision (vacatur), and injunctive relief.  See Am. Compl. (dkt.

15   10) at 45.  They succeeded in having the Court vacate Defendants' deregulation decision, but

16   were ultimately unsuccessful in pursuing injunctive relief.  See Monsanto, 130 S. Ct. at

17   2761-62.  The Supreme Court's opinion in this case articulates the difference between a

18   vacatur and injunctive relief:

19              [W]e do not know whether and to what extent APHIS would seek to effect a
             limited deregulation during the pendency of the EIS process if it were free to
20           do so; we do know that the vacatur of APHIS's deregulation decision means
             that virtually no RRA can be grown or sold until such time as a new
21           deregulation decision is in place, and we also know that any party aggrieved by
             a hypothetical future deregulation decision will have ample opportunity to
22           challenge it, and to seek appropriate preliminary relief, if and when such a
             decision is made.

23

24

25          ───────────────
            [10]  This Court previously found that a limited award would be appropriate, and the parties were
26   instructed to "limit their briefs to the issues this Court raised but did not resolve in its [Referral] Order."
     See Supp. Br. Order (dkt. 351).  Thus Plaintiffs do not directly argue that the Court should compensate
27   them in full; rather they argue that although Magistrate Judge Laporte's Report and Recommendation
     "supports a similar result here," it also "illustrates that Plaintiffs' previous suggestion of at most a 20%
28   reduction . . . was more than fair."  See Pls.' Supp. Sugar Beets Br. at 10.  Plaintiffs stated in their
     original supplemental brief that they "do not dispute that some reduction is appropriate for the remedy
     difference."  See Pls.' Supp. Br. at 11.

Id. at 2761.  The Court further found injunctive relief unwarranted because this Court's "injunction against planting does not have any meaningful practical effect independent of its vacatur."  Id. (emphasis added).  The vacatur alone "was sufficient to redress [Plaintiffs'] injury."  Id.

After the Supreme Court's reversal of this Court's grant of injunctive relief, Defendants could partially deregulate RRA before preparation of an EIS, and force Plaintiffs to litigate any partial deregulation decision in a separate suit.  If Plaintiffs had prevailed in obtaining their sought-after injunctions, Defendants would have been prohibited from deregulating RRA altogether until it had first prepared an EIS.  Although the Supreme Court explained that the "practical effect[s]" of a vacatur and injunction are essentially the same, see id., theoretically Plaintiffs now run a risk of having to litigate a partial deregulation decision, which reflects that their success in the suit was somewhat limited.  See Hensley, 461 U.S. at 440 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").  Because the difference between the remedies sought and the remedies obtained in the litigation is minimal, however, the Court finds that only a 10% overall reduction in attorneys' fees is appropriate.

### C.    Appropriate Market Rates

In its Referral Order, this Court found "that market, rather than EAJA rates, are appropriate" in this case.  Referral Order at 6.  The case involved a specialized environmental issue and "Plaintiffs have proffered declarations asserting that their expertise . . . (1) was vital in this case, . . . and (2) is not available at the EAJA adjusted rate . . . ."  Id.  The Court reserved judgment, however, "as to whether the rates proposed by Plaintiffs are appropriate market prices."  Id.  The Court now finds that the market rates proposed by Plaintiffs are appropriate.

For their work on the district court portion of the case, Plaintiffs seek the following market rates:

| Plaintiffs' Proposed Market Rates for District Court Litigation | |
|---|---|
| **Timekeeper** | **Hourly Rate** |
| Will Rostov | $425 |
| Joseph Mendelson | $525 |
| Kevin Golden | $275 |
| George Kimbrell | $275 |
| David Hoskins | $176.78 |
| Miyoko Sakashita | $260 |
| Law Clerks | $125 |

1st Fee Mot. at 20.  Three separate experts in environmental litigation and/or San Francisco legal fees submitted declarations in support of these requested market rates.  See Drury Decl. (dkt. 261-13); Weissglass Decl. (dkt. 261-14); Wheaton Decl. (dkt. 261-15).

Plaintiffs also seek to recover fees for their time spent on appeal, and request the following market rates for their appellate work:

| Plaintiffs' Proposed Market Rates for Appellate Work | |
|---|---|
| **Timekeeper** | **Hourly Rate** |
| George Kimbrell | $410 |
| Andrew Kimbrell | $650 |
| Will Rostov | $575 |
| Kevin Golden | $410 |
| Joseph Mendelson | $650 |
| Paige Tomaselli | $385 |
| Kateryna Rakowsky | $350 |
| Law Clerks | $145 |

Kimbrell Decl. ¶ 30.  The same three experts who supported Plaintiffs' requested market rates for their district court work also submitted declarations supporting Plaintiffs' requested market rates for their appellate work.  See Drury Decl. 2 (dkt. 318); Weissglass Decl. 2 (dkt. 319); Wheaton Decl. 2 (dkt. 320).  Also in support of their requested market rates for the appellate work, Plaintiffs submitted an additional expert declaration, see Layton Decl. (dkt. 321), along with declarations and resumes of their attorneys, see Pls.' Supp. Br. at 6 n.2

(listing declarations and corresponding docket numbers).  Based on the declarations submitted by Plaintiffs, the Court finds that Plaintiffs have met their burden under the EAJA of establishing the reasonableness of the market rates they seek for their district court work and appellate work.  See EAJA, 28 U.S.C. § 2412(B); Schwartz v. Sec'y of HHS, 73 F.3d 895, 907 (9th Cir. 1995); Natural Res. Def. Council, Inc. v. Winter, 543 F.3d 1152, 1161 (9th Cir. 2008).

Defendants attempt to rebut Plaintiffs' requested fees, arguing that Plaintiffs' specialized knowledge relating to environmental litigation was not "necessary" to every aspect of the case, and that the rates proposed by Plaintiffs are therefore too high.  See Dfs.' Supp. Br. at 13 (suggesting that "a competent administrative law practitioner" would have been able to perform some of the tasks for which Plaintiffs have billed time).  Thus Defendants urge the Court to apply the following market rates for Plaintiffs' district court work:

| Defendants' Proposed Market Rates for District Court Litigation | |
| --- | --- |
| Timekeeper | Hourly Rate |
| Will Rostov | $325 |
| Joseph Mendelson | $325 |
| Kevin Golden | $250 |
| George Kimbrell | $250 |
| David Hoskins | $250 |
| Miyoko Sakashita | $250 |

Id. at 13-16 (not disputing the market rates sought for law clerks' time).  The only other basis Defendants assert for their proposed market rates of $350 and $250 is an "[a]nalog[y] from the management structure of the four Justice Department attorneys that wrote or reviewed the federal briefs in this case."  See id.  Oddly, Defendants do not take issue with the market rates proposed by Plaintiffs for their appellate work, see generally id., instead arguing that the Court should simply reduce all fees sought for appellate work by 75% to reflect Plaintiffs' unsuccessful opposition of Defendants' appeal, as described supra Part III(B).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The Court is unpersuaded by Defendants' argument that attorneys seeking fees above the EAJA statutory amount must utilize their special skills for each and every task performed during the litigation. Defendants here repeat an argument they made to Magistrate Judge Laporte in the Sugar Beets I case. See No. 08-00484 (dkt. 648). Magistrate Judge Laporte was similarly unpersuaded by Defendants' argument. See id. (finding that the real question "is whether an attorney has specialized knowledge that was 'needful for the litigation,' even if some tasks within the case did not require that specific knowledge") (citing Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991); Winter, 543 F.3d at 1158). As this Court has already held, Plaintiffs' specialized knowledge was necessary to litigate the complex environmental issues involved in this case, and therefore Plaintiffs are entitled to recover fees at reasonable market rates. Referral Order at 6. The only issue currently before the Court therefore is whether the rates proposed by Plaintiffs are reasonable. Because Defendants have not rebutted Plaintiffs' numerous declarations, which establish the reasonableness of the requested rates,[11] the Court finds that Plaintiffs may recover fees at the market rates they seek.

### D.      Costs and Fees on Fees

Plaintiffs correctly argue that, as a prevailing party, they are entitled to recover both the costs they incurred during the litigation, and their fees for time spent successfully litigating their attorneys' fees. See 1st Fee Mot. at 20-21 (citing 28 U.S.C. § 2412(d)(1)(A); Local Rule 54-1; Comm'r, Immigration and Naturalization Serv. v. Jean, 496 U.S. 154, 163-64 (1990)). Plaintiffs may recover their fees on fees to the extent they have prevailed on their fees motion. See Jean, 496 U.S. at 163 n.10 (citing Hensley, 461 U.S. at 437). Plaintiffs seek to recover the following amounts in costs and fees on fees:

---

[11] Plaintiffs sought similar rates for work they performed while litigating Sugar Beets I, No. 08-00484 (dkt. 648), which as discussed supra, involved substantially the same issues as this case. Although that case was less ground-breaking than this one because it was the second, rather than the first, case involving deregulation of genetically-engineered crops, Magistrate Judge Laporte, looking at a declaration from only one expert, determined that the rates requested by Plaintiffs were reasonable. Id.

| Expense Type | Amount | Time frame | Citation |
|---|---|---|---|
| Costs | $7,648.34 | District court litigation | 1st Fee Mot. at 21 |
| Costs | $23,322.46 | Appellate litigation | 2d Fee Mot. at 21 |

**Total Costs Sought:        $30,970.80**

| Fees on fees | $32,049.21 | 1st Fee Motion | Pls.' Supp. Br. at 18 |
|---|---|---|---|
| Fees on fees | $35,249.78 | 2d Fee Motion | Pls.' Supp. Br. at 18 |
| Fees on fees | $30,881.09 | Supplemental Fee Proceedings | Pls.' Supp. Br. at 18 |

**Total Fees on Fees Sought:        $98,180.08**

Plaintiffs have calculated their fees on fees using the EAJA statutory rate of $186.48 rather than market rates for specialized environmental attorneys.  Kimbrell Decl. in Support of Reply (dkt. 339) at 1.  To prove their costs and fees on fees, Plaintiffs have submitted declarations from their attorneys, which include exhibits documenting hours spent litigating fees and containing copies of receipts.  See, e.g., Kimbrell Decl. in Support of 2d Fee Mot. (dkt. 303); id. Ex. B (dkts. 305-11); Kimbrell Decl. in Support of Reply (dkt. 339) & Ex. A-B; Tomaselli Decl. in Support of Reply (dkt. 340) at 1 & Ex. A; Kimbrell Decl. in Support of Supp. Br. (dkt. 363) & Ex. A; Rakowski Decl. in Support of Supp. Br. (dkt. 364) & Ex. A.

Defendants ignored Plaintiffs' request for costs and fees on fees in their briefs and therefore have not rebutted any of the evidence submitted by Plaintiffs.  Plaintiffs have established the reasonableness of their costs and time spent litigating fees by submitting documentary evidence.  The Court's review of the declarations and exhibits shows the costs to be reasonable, the therefore the Court finds that Plaintiffs are entitled to recover the $30,970.80 they seek in costs.  Plaintiffs are entitled to a reduced fees on fees award, however, because although they prevailed on their fees motion, their success was limited.  Because this Court reduced the attorneys' fees sought by Plaintiffs by 10%, see supra Part III(B), a corresponding 10% reduction in the $98,180.08 sought by Plaintiffs in fees on fees reasonably reflects Plaintiffs' "limited success" in litigating their fees motions.  See Jean, 496 U.S. at 163 n.10 (citing Hensley, 461 U.S. at 437).  After a 10% reduction, Plaintiffs

1  may recover $88,362.07 for fees on fees.  In sum, for their costs and fees on fees, Plaintiffs

2  may recover a total of **$119,332.87** ($30,970.80 plus $88,362.07).

3  **IV.    CONCLUSION**

4        Accordingly, the Court calculates Plaintiffs' attorneys' fee award as follows:

| Timekeeper | Billed Hours | Market Hourly Rate | Totals |
|---|---|---|---|
| **DISTRICT COURT PHASE - FEES SOUGHT**[12] | | | |
| Will Rostov | 1,166 | $425 | $495,550.00 |
| Joseph Mendelson | 211.25 | $525 | $110,906.25 |
| Kevin Golden | 449.7 | $275 | $123,667.50 |
| George Kimbrell | 200.75 | $275 | $55,206.25 |
| David Hoskins | 75 | $176.78 | $13,258.50 |
| Miyoko Sakashita | 240.5 | $260 | $62,530.00 |
| Law Clerks | 407.85 | $125 | $50,981.25 |
| | | **District Court Phase Total**: | **$912,099.75** |

| Timekeeper | Billed Hours | Market Hourly Rate | Totals |
|---|---|---|---|
| **APPELLATE PHASE - FEES SOUGHT**[13] | | | |
| George Kimbrell | 745.7 | $410 | $305,737.00 |
| Andrew Kimbrell | 105 | $650 | $68,250.00 |
| Will Rostov | 268.5 | $575 | $154,387.50 |
| Kevin Golden | 229.4 | $410 | $94,054.00[14] |
| Joseph Mendelson | 63.1 | $650 | $41,015.00 |
| Paige Tomaselli | 130.2 | $385 | $50,127.00 |
| Kateryna Rakowsky | 58.4 | $350 | $20,440.00 |
| Law Clerks | 128.75 | $145 | $18,668.75 |
| | | **Appellate Phase Total:** | **$752,679.25** |

---

[12]   See 1st Fee Mot. at 20.

[13]   See Kimbrell Decl. in Support of 2d Fee Mot. ¶ 30.

[14]   Plaintiffs miscalculated the total fees for Kevin Golden's appellate work as being $96,348.00 in Kimbrell's Declaration.  See id.

**United States District Court**
For the Northern District of California

1    Plaintiffs seek a total of $1,664,779 in attorneys' fees for the district court and

2    appellate phases of the litigation ($912,099.75 plus $752,679.25).  After a 10% reduction to

3    reflect Plaintiffs' "limited success," Plaintiffs are entitled to recover $1,498,301.10 of that

4    amount.  Adding Plaintiffs' costs and fees on fees (which totaled $119,332.87) to their

5    attorneys' fee award results in a total award of **$1,617,633.97**.

6         **IT IS SO ORDERED.**

7

8    Dated: November 8, 2011                          _____
                                                      CHARLES  R. BREYER
9                                                     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

G:\CRBALL\2006\1075\order re fees.wpd                    18